

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

PENN-AMERICA INSURANCE
COMPANY,

Plaintiff,

v.  CASE NO. 3:08-CV-00559-J-25TEM

GATOR STEEL ERECTOR, INC., *et al.*,

Defendants.
_____

MICHAEL DOOHAN,

Plaintiff,

v.  CASE NO. 3:08-CV-00712-J-25TEM

TAMPA AMALGAMATED STEEL
CORPORATION, *et al.*,

Defendants.
_____/

## ORDER

**THIS CAUSE** is before the Court on Third Party Defendant Penn-America Insurance Company's Amended Motion for Judgment on the Pleadings (Dkt. 18); Plaintiff Michael Doohan's and First-Defendant Gator Steel Erector, Inc.'s Response in Opposition thereto (Dkt. 20); Plaintiff's Motion to File Reply to Plaintiff Michael Doohan's and First-Defendant Gator Steel Erector, Inc.'s Response in Opposition

1

to Defendant Penn-America Insurance Company's Motion for Judgment on the Pleadings (Dkt. 23); Defendants, Kim Lim and Gator Steel Erector, Inc.'s, Motion to Dismiss Plaintiff's First Amended Complaint (Dkt. 21); and Plaintiff's Response thereto (Dkt. 24).[1]

## I. Background

By an Order dated February 11, 2009, the Court consolidated the two actions at issue here, Case No. 3:08-CV-00559-J-25TEM and Case No. 3:08-CV-00712-J-25TEM. (See Dkt. 17.)

In Case No. 3:08-CV-00712-J-25TEM, Third Party Plaintiffs, Michael Doohan ("Doohan") and Gator Steel Erector, Inc. ("Gator Steel"), brought a Third-Party Complaint against Third Party Defendant, Penn-America Insurance Company ("Penn-America"), seeking damages for breach of an insurance contract and breach of the duties of good faith and fair dealing.[2] (See Dkt. 2 in Case No. 3:08-CV-00712-J-25TEM.) The allegations in the Third-Party Complaint arise out of a commercial general liability policy issued by Penn-America to Gator Steel for the period October 28, 2004 to October 28, 2005, and Doohan's July 26, 2005 injury as a result of the alleged negligence of an employee of Gator Steel, Richard Carroll. (See id.)

Doohan and Gator Steel allege that "Doohan was an unpaid volunteer on the

---

[1] Unless noted otherwise, all citations to the docket in this Order refer to the docket in Case No. 3:08-CV-00559-J-25TEM.

[2] The Third-Party Complaint was originally filed in state court. (See Dkt. 2 in Case No. 3:08-CV-00712-J-25TEM.)

2

construction project" at the time of his injury[3] and that his damages exceeded the monetary limits of the insurance policy. (*See id.*) After Doohan filed a lawsuit against Gator Steel, Gator Steel timely notified Penn-America of the action, but Penn-America refused to comply with the policy and defended the suit on a reservation of rights. (*See id.*) When Doohan offered to settle his claim for a payment within the policy limits, Penn-America refused to accept the offer and later ceased defending Gator Steel. (*See id.*) Eventually, Gator Steel agreed to a consent judgment, which exceeded the monetary limits of the policy and assigned its right to pursue its cause of action against Penn-America to Doohan, who became a third-party beneficiary of the policy. (*See id.*)

In the member case, Case No. 3:08-CV-00559-J-25TEM, Plaintiff, Penn-America, brought a lawsuit against Doohan, Gator Steel, and various officers and employees of Gator Steel, seeking a declaration of its rights and obligations under the insurance policy. (Dkt. 3.) Penn-America asserts the policy does not provide coverage because the policy had been cancelled before the injury occurred and because Doohan was working for Gator Steel, regardless of whether he was an employee or a volunteer, and Gator Steel allegedly was not covered under the policy. (*Id.*)

---

[3] In his Complaint filed in state court, Doohan also alleges that he "was invited onto the premises for the purposes of advancing the business intentions of [Gator Steel and specifically], Plaintiff was on the premises to help in the construction of the fabricated steel structure of the Palm Coast Walgreens," and that he received no compensation for his services. (Dkts. 3-2 and 3-3.)

## II. Motion for Judgment on the Pleadings (Dkt. 18)

### A. Standard

Under Rule 12(c) of the Federal Rules of Civil Procedure, a party may move for judgment on the pleadings "[a]fter the pleadings are closed." Fed.R.Civ.P. 12(c). The pleadings are not closed if the defendant has not answered the complaint. *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 n.8 (11th Cir. 2002). "Judgment on the pleadings is appropriate when there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts." *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998); *see also Bryan Ashley Int'l, Inc. v. Shelby Williams Indus., Inc.*, 932 F. Supp. 290, 291 (S.D. Fla. 1996) (stating "the moving party must clearly establish that no material issue of fact remains unresolved and that it is entitled to judgment as a matter of law"). "Moreover, the district court must view the facts presented in the pleadings, and all inferences drawn thereof, in the light most favorable to the non-moving party." *Bryan Ashley*, 932 F. Supp. at 291. "The complaint may not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hawthorne*, 140 F.3d at 1370 (internal quotation marks omitted).

### B. Relevant Contractual Provisions

Section I, Coverage A, subsection 2.e. of the Commercial General Liability

Coverage Form excludes from coverage:

> "[B]odily injury" to:
> (1) An "employee of the insured arising out of and in the course of:
>   (a) Employment by the insured; or
>   (b) Performing duties related to the conduct of the insured's business; or
>
> . . .
>
> This exclusion applies:
> (1) Whether the insured may be liable as an employer or in any other capacity; and
> (2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.
>
> This exclusion does not apply to liability assumed by the insured under an "insured contract."

(Dkt. 3-4 at 20.)

Endorsement S2066, titled Exclusion - Injury to Independent Contractors, modifies subsection 2 above by adding the following language:

> This insurance does not apply to "bodily injury," "personal and advertising injury" or "medical payments" to any independent contractor, subcontractor, casual laborer or volunteer worker, or to any employee of any independent contractor or subcontractor, while performing any work for you."

(Dkt. 3-5 at 44.)

Section I, Coverage C Medical Payments, subsection 2. Exclusions a. provides that expenses for bodily injury will not be paid to "any insured, except 'volunteer workers.'" (Dkt. 3-4 at 25.)

Section II - Who is an Insured - provides in part:

> 2. Each of the following is also an insured:
>   a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your

5

> "employees," other than either your "executive officers" . . . or your managers . . ., but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. . . .

(*Id.* at 27.)

### C. Discussion

Penn-America asserts its Motion for Judgment on the Pleadings is properly before the Court as it has filed an Answer and, therefore, the pleadings are closed. (Dkt. 18.) Penn-America argues it is entitled to judgment on the pleadings as to the breach of contract claim because the insurance policy it issued to Gator Steel does not provide coverage for Doohan's injury, regardless of whether Doohan was an employee or a volunteer when the injury occurred. (*Id.*)

Doohan and Gator Steel do not seem to dispute that the Motion for Judgment on the Pleadings is properly before the Court. (*See* Dkt. 20.) With respect to Penn-America's other arguments, however, they assert that material issues of fact remain and judgment on the pleadings should not be entered. (*Id.*) Specifically, Doohan and Gator Steel argue there is an inconsistency in the policy as Endorsement S2066 attempts to take away coverage that is included in the policy under Coverage C Medical Payments and the inconsistency should be resolved in favor of the insured. (*Id.*)

Under Florida law:

> [a] contract of insurance, prepared and phrased by the insurer is to be construed liberally in favor of the insured and strictly against the

insurer, where the meaning of the language is doubtful, uncertain or ambiguous. In the absence of a clear expression, a policy of insurance may not give a right in one paragraph and retract it in another. Therefore, an inconsistency created by an exclusionary clause should be resolved in favor of the beneficiary.

*Moore v. Conn. Gen. Life Ins. Co.*, 277 So.2d 839, 842 (Fla. Dist. Ct. App. 1973); *see also Tire Kingdom, Inc. v. First S. Ins. Co.*, 573 So.2d 885, 887 (Fla. Dist. Ct. App. 1990) ("We find there was coverage under the insurance policy even though there were conflicting provisions that created an ambiguity concerning the question of coverage. . . . The policy in this case attempts to provide coverage for certain advertising activities and then exclude those same activities. Such inconsistencies must be resolved in favor of the insured . . . .").

In the present case, Section I, Coverage A, subsection 2.e. of the Commercial General Liability Coverage Form and Endorsement S2066 exclude from coverage bodily injuries suffered by employees and volunteer workers. (*See* Dkts. 3-4 at 20 and 3-5 at 44.) In contrast, Section II of the Commercial General Liability Coverage Form provides that employees and volunteer workers are insured under the policy "for acts within the scope of their employment . . . or while performing duties related to the conduct of [Gator Steel's] business." (Dkt. 3-4 at 27.) Similarly, Section I, Coverage C, subsection 2.a. provides that expenses for bodily injury will be paid to volunteer workers. (*Id.* at 25.) Based on these provisions, the Court finds that the language in the insurance contract is ambiguous as to the coverage available to employees and volunteer workers and that the inconsistencies must be resolved in

favor of the beneficiaries of the policy, Gator Steel and/or Doohan.

Doohan was an insured under the policy because he was a volunteer performing duties related to Gator Steel's business. (*See* Dkt. 2 in Case No. 3:08-CV-00712-J-25TEM (alleging that Doohan assisted Gator Steel with a construction project as an unpaid volunteer at the time of his injury); Dkts. 3-2 and 3-3 (alleging that he was on the premises for the purpose of advancing Gator Steel's business intentions and, specifically, for the purpose of helping in the construction of the fabricated steel structure of the Palm Coast Walgreens, and stating that he received no compensation for his services).) Accordingly, Penn-America's Motion for Judgment on the Pleadings is due to be denied as to the breach of the contract claim.[4]

Although Penn-America argues the bad faith claim should also be dismissed, the Court will not address this argument as it was premised on the assumption that there is no coverage. (Dkt. 18.) In sum, Penn-America's Motion for Judgment on the Pleadings is due to be denied as to all claims in the Third-Party Complaint.

### III. Motion to Dismiss Plaintiff's First Amended Complaint (Dkt. 21)

Defendants, Kim Lim and Gator Steel, argue Penn-America's claim against them should be dismissed because of Penn-America's failure to timely serve the First Amended Complaint in accordance with Rules 4 and 5 of the Federal Rules of

---

[4] Because the Court has already decided to deny Penn-America's Motion for Judgment on the Pleadings as to the breach of contract claim, the Court will not address Doohan and Gator Steel's alternative arguments.

Civil Procedure. (Dkt. 21.) Kim Lim and Gator Steel also state that service occurred only after a hearing during which Penn-America was reminded of its duty to serve the First Amended Complaint. (*Id.*) Penn-America responds that because the original Complaint was adequately served, a dismissal of the action based on improper service of the First Amended Complaint is unwarranted. (Dkt. 24.) Penn-America also asserts Gator Steel waived the defense of improper service by failing to raise it at or prior to the hearing on the Motion to Consolidate as well as in its Response in Opposition to Defendant Penn-America Insurance Company's Motion for Judgment on the Pleadings. (*Id.*)

The record in this case demonstrates that on June 3, 2008, Penn-America filed a Complaint for Declaratory Judgment against Kim Lim and Gator Steel, among others. (Dkt. 1.) Kim Lim and Gator Steel were served with a copy of the Summons and the Complaint on June 18, 2008. (*See* Dkt. 14.) On July 1, 2008, Penn-America filed its First Amended Complaint for Declaratory Judgment against Kim Lim and Gator Steel, among others. (Dkt. 3.) On February 11, 2009, more than 220 days after the First Amended Complaint was filed, Kim Lim and Gator Steel were served with a copy of the First Amended Complaint. (*See* Dkt. 16.)

> Rule 4(m) of the Federal Rules of Civil Procedure provides in part:
>
> If a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an

appropriate period.

Fed.R.Civ.P. 4(m). The determination of whether "good cause" exists is within the discretion of the trial court. *Williams v. Publix Warehouse*, 151 F.R.D. 428, 431 (M.D. Fla. 1993). "If a plaintiff fails to make any attempt at service within the 120-day period, it is likely that a court will find no showing of good cause." *Id.*

"[E]ven in the absence of a showing of good cause," however, the trial court has discretion "to extend the time for service of process." *Horenkamp v. Van Winkle & Co.*, 402 F.3d 1129, 1132 (11th Cir. 2005). "Relief may be justified, for example, if the applicable statute of limitations would bar the refiled action, or if the defendant is evading service or conceals a defect in attempted service." *Id.* at 1132-33; *see also Lepone-Dempsey v. Carroll County Comm'rs*, 476 F.3d 1277, 1282 (11th Cir. 2007) (stating that "the district court must still consider whether any other circumstances warrant an extension of time based on the facts of the case").

"As a general rule, an amended complaint supersedes and replaces the original complaint unless the amendment specifically refers to or adopts the earlier pleading." *Varnes v. Local 91, Glass Bottle Blowers Ass'n of the U.S. & Can.*, 674 F.2d 1365, 1370 n.6 (11th Cir. 1982). In *Varnes*, the Eleventh Circuit did "not decide at what point an amended complaint supersedes the original complaint: when it is filed, or when it is served." *Id.* (internal citations omitted). The Eleventh Circuit stated, however, that the policy behind Rule 4 is giving notice of all claims to the defendant. *Id.* at 1368. The Eleventh Circuit has extended the time for service

where the defendant had already received notice of the suit and had been properly served. *See Horenkamp*, 402 F.3d at 1133; *see also Grammenos v. Lemos*, 457 F.2d 1067, 1070 (2d Cir. 1972) ("The requirements of the federal process rule should be liberally construed to effectuate service [where] the defendant has received actual notice of the impending action.").

In the present case, the First Amended Complaint superseded the original Complaint, even though it is unclear under Eleventh Circuit case law whether this occurred at the time of filing or at the time of service. Since Plaintiff made no attempt to serve Defendants within the 120-day period following the filing of the First Amended Complaint, Plaintiff cannot show good cause for the failure to serve Defendants. The record, however, indicates that Plaintiff has eventually served Defendants with the First Amended Complaint, even though it was more than 100 days after the deadline. In addition, Defendants had notice of the filing of the First Amended Complaint because it was docketed in the same case in which they had been timely served with the original Complaint. Importantly, Defendant Gator Steel has waived its objections by failing to raise them in its responsive pleading in opposition to Penn-America's Motion for Judgment on the Pleadings. *See* Fed.R.Civ.P. 12(h)(1)(B)(ii) (stating that the defenses, such as lack of personal jurisdiction, insufficient process, and insufficient service of process, are waived if the party fails to include them, *inter alia*, in a responsive pleading); *see also Pardazi v. Cullman Med. Ctr.*, 896 F.2d 1313, 1317-18 (11th Cir. 1990) (stating that objections

to service of process can be waived and finding a waiver where Defendant had made a pre-answer motion under Rule 12 without raising its service-of-process objections).

The Court finds the late service of the First Amended Complaint does not warrant a dismissal of Penn-America's claim against Defendants, Kim Lim and Gator Steel because Defendants have been served with the First Amended Complaint, had notice of the First Amended Complaint long before being served with it, and one of them has waived its objections by failing to raise them in its responsive pleading.

Accordingly, it is **ORDERED**:

1. Third Party Defendant Penn-America Insurance Company's Amended Motion for Judgment on the Pleadings (**Dkt. 18**) is **DENIED**.

2. Plaintiff's Motion to File Reply to Plaintiff Michael Doohan's and First-Defendant Gator Steel Erector, Inc.'s Response in Opposition to Defendant Penn-America Insurance Company's Motion for Judgment on the Pleadings (**Dkt. 23**) is **DENIED**.

3. Defendants, Kim Lim and Gator Steel Erector, Inc.'s, Motion to Dismiss Plaintiff's First Amended Complaint (**Dkt. 21**) is **DENIED**.

**DONE AND ORDERED** this 10th day of September, 2009.

HENRY LEE ADAMS, JR.
United States District Judge

Copies to:   Counsel of Record